1   **Mark & Bobbie Eddy**
    **125 Crowley Lake Dr.**
2   **Mammouth Lake, Ca. 93546**
    **760-935-4963**
3

4                                                      # FILED

5                                                      FEB 2 2 2018

6                                              CLERK, U.S. DISTRICT COURT
                                              EASTERN DISTRICT OF CALIFORNIA
7                                              BY _____
                                                        DEPUTY CLERK

8

9                                        2: 18 - CV - 4 0 0   KJM  DB PS

10

11                     **UNITED STATES DISTRICT COURT**
                       **EASTERN DISTRICT OF CALIFORNIA**

10  MARK & BOBBIE EDDY                    | Case No.:
11        Plaintiff,                      | **COMPLAINT** *FOR: LACK OF STANDING*
    v                                     | */WRONGFUL FORECLOSUE, FRAUD IN THE*
12  FEDERAL HOME LOAN MORTGAGE            | *CONCEALMENT, FRAUD IN THE INDUCEMENT,*
    CORPORATION AS TRUSTEE FOR            | *UNCONSONABLE CONTRACT, QUITE TITLE, SLANDER*
13  FREDDIE MAC MULTICLASS                | *OF TITLE, DECLARATORY RELIEF*
    CERTIFICATES SERIES 3450, BANK OF     |
14  AMERICA, N.A. MICHAEL M.              |
    BAKER.ESQ. Does 1-5                   | # FILED BY FAX
15        Defendants

16                     **VENUE, JURISDICTION AND PARTIES**

17    1.  Venue is properly before this Court. Most of the events, circumstances, damages and denials

18  of rights described herein took place in Mono County, Ca..

19    2.  Defendant Federal Home Loan Mortgage Corporation has a main office at  8200 Jones Branch

20  Dr., McLean, Va. 22102, and does business  in Mono Country as Freddie Mac .  Federal Home Loan

21  Mortgage Corporation is Trustee for FREDDIE MAC MULTICLASS CERTIFICATES SERIES

22  3450, Service of Process is  Secretary of State, Federal Home Loan Mortgage Corporation is a

23  Corporation that accepts service through C T CORPORATION SYSTEM 818 W 7TH ST STE 930,

24  LOS ANGELES CA 90017.  Federal Home Loan Mortgage Corporation as Trustee for FREDDIE

25  MAC MULTICLASS CERTIFICATES SERIES 3450,   claims to be Endorsee of the Note and

26  Assignee of the Deed of Trust, and therefore successor in interest to the originator of the loan, Bank

27  of America, N.A.. .

28

1    3.  Defendant Bank of America, N.A. the Servicer, does substantial business in Mono County,

2    and uses CT Corporation to receive service of process, according to the California Secretary of State.

3    4.  Defendant Michael M. Baker, Esq., can be served at 4376 Jutland Dr., Suite 200, San Diego,

4    Ca. 92177-0934. Defendant Baker aided and abetted in the wrongful foreclosure and wrongful

5    eviction.

6    5.  The property in question, 125 Crowley Lake Dr., Mammouth Lake, Ca. 93546, is located in

7    Mono County. The Instruments mentioned were recorded in Mono County, Calif.

8    6.  The Legal Description of the property is:

9    ALL THAT CERTAIN REALPROPERTY SITUATED IN THE COUNTY OF Mono County STATE OF
10   CALIFORNIA DESCRIBED AS FOLLOWS:

11

12                          **GENERAL ALLEGATIONS**

13   7.  This is an action brought by Plaintiff for declaratory judgment, injunctive and equitable relief,

14   and for compensatory, special, general and punitive damages

15   8.  Mark & Bobbie Eddy has applied for modifications on numerous times recently and has been

16   denied. Mark & Bobbie Eddy was given a Single Point of Contact, but that Single Point of Contact

17   never answered the phone despite the fact that Mark & Bobbie Eddy called the number given on

18   multiple occasions. At the same time the Eddy's were told they were in an active modification they

19   received a sale date for the foreclosure of their Mono County home.  On April 26, 2017, Plaintiff

20   Mark & Bobbie Eddy received the signed Declaration and Forensic Report from licensed fraud

21   expert, Michael Carrigan, of Certified Forensic Loan Auditors (Exhibit A).  Plaintiff Mark & Bobbie

22   Eddy enters this as newly discovered evidence and positive proof that Defendants have committed a

23   violation of California Code of Civil Procedure §473, "Fraud Upon The Court ".

24   9.  The rule thus expressly provides that either intrinsic or extrinsic fraud will constitute grounds

25   for upsetting a judgment if a motion is made within one year. In the Mark & Bobbie Eddy case this

26   is within the one year statute.

27   10.  The California Supreme Court has done what the US Supreme Court has failed to do, i.e., it

28   has attached a definite understanding to the meaning of the phrase, "Fraud Upon the Court."

1      11.  California's Rule of Civil Procedure §473 is identical to the Federal Rule 60 (b). [Civ. No.

2      19985, First Dist., Div. Two. Dec. 14, 1962.]

3      12.  Please review the following case opinion for comparison:

4      ISIAH L. BOTTOM, Plaintiff and Appellant, v. KATHRYN M. BOTTOM, Defendant and Respondent.

5
       COUNSEL
6

7      Borah R. Hansen for Plaintiff and Appellant.

8      Pierre A. Fontaine for Defendant and Respondent.

9      OPINION

10     SHOEMAKER, J.

11     Plaintiff Isiah L. Bottom brought this action to set aside or enjoin the enforcement of an interlocutory
12     decree of divorce. [1a] He alleges that on March 14, 1956, defendant Kathryn M. Bottom filed a
       divorce action against him in the Alameda County Superior Court; that he was served with a copy of
13     the summons and complaint on March 29, 1956, and that thereafter the parties became reconciled
       and lived together until July 13, 1956; that subsequently, on June 10, 1957, plaintiff's default was
14     entered for failure to answer the complaint in the divorce action, and on June 24, 1957, a default
       judgment was entered awarding Kathryn an interlocutory decree of divorce upon the ground of
15     cruelty. Plaintiff additionally alleges that said judgment was procured through "extrinsic fraud"
       practiced upon the court," in that Kathryn fraudulently concealed from the court her reconciliation
16     with the plaintiff "which if disclosed would have rendered improper the granting ... of such
       interlocutory decree of divorce"; that he had a good and sufficient defense to the divorce action, and
17     that he had no knowledge of the judgment until January 1958. He prayed that the judgment be
18     declared null and void and that defendant Kathryn Bottom be permanently enjoined from enforcing it.
       [210 Cal. App. 2d 786]
19
       Defendant demurred generally to the complaint, and also moved to strike the complaint and for
20     judgment on the pleadings. The court denied the motion to strike and sustained the demurrer with
       leave to amend. Upon the plaintiff's failure to amend the complaint within the time allowed by the
21     court, judgment was entered in favor of the defendant Kathryn Bottom. Plaintiff appeals therefrom.

22     [2] Where a plaintiff is given leave to amend but refuses to do so, the function of the appellate court
23     is limited to determining whether the complaint states a cause of action, not whether appellant might
       have been able to do so. (Levinson v. Bank of America (1954) 126 Cal. App. 2d 122, 125.[271 P.2d
24     632]; Pavlovsky v. Board of Trade (1959) 171 Cal. App. 2d 110, 115 [340 P.2d 63].) [1b] When the
       complaint in the instant case is examined in the light of this rule, it becomes apparent that no cause
25     of action is therein stated.

26     Appellant's complaint purports to plead facts constituting "extrinsic fraud" in the procurement of the
       interlocutory decree of divorce. [3] However, the sole fraudulent act alleged is that respondent
27     concealed from the court her reconciliation with appellant and thereby procured a judgment to which
28     she would not otherwise have been entitled. The California courts have repeatedly held that such

1    conduct constitutes intrinsic rather than extrinsic fraud, and will not support a collateral attack upon
     the judgment. fn. 1 [4] In Westphal v. Westphal (1942) 20 Cal. 2d 393, 397 [126 P.2d 105], the court
2    stated: "The final judgment of a court having jurisdiction over persons and subject matter can be
     attacked in equity after the time for appeal or other direct attack has expired only if the alleged fraud
3    or mistake is extrinsic rather than intrinsic. [Citations.] [5] Fraud or mistake is extrinsic when it
     deprives the unsuccessful party of an opportunity to present his case to the court. [Citations.] [6] If
4    an unsuccessful party to an action has been kept in ignorance thereof [citations] or has been
     prevented from fully participating therein [citation], there has been no true adversary proceeding,
5    and the judgment is open to attack at any time. A party who has been given proper notice of an
     action, however, and who has not been prevented from full participation **[210 Cal. App. 2d 787]**
6    therein, has had an opportunity to present his case to the court and to protect himself from any fraud
7    attempted by his adversary. [Citations.] Fraud perpetrated under such circumstances is intrinsic,
     even though the unsuccessful party does not avail himself of his opportunity to appear before the
8    court."

9    [7] In Heathman v. Vant (1959) 172 Cal. App. 2d 639 [343 P.2d 104], the defendant in a divorce
     action sought to set aside interlocutory and final decrees on the ground that plaintiff wife had
10   perpetrated an extrinsic fraud on the court by wilfully misrepresenting her California residence. An
     order denying his motion to annul the decrees was affirmed on appeal, with the court stating: "It is
11   settled in this state that a judgment will not be set aside because it is based upon perjured testimony
     or because material evidence is concealed or suppressed, that such fraud both as to the court and
12   the party against whom judgment is rendered is not fraud extrinsic to the record for which relief may
13   be had. [Citation.] The rule is the same whether the judgment sought to be set aside is a default
     judgment or rendered after answer and contested trial. [Citations.]" (Pp. 648-649.) (To the same
14   effect, see Harvey v. Griffiths (1933) 133 Cal. App. 17 [23 P.2d 532], where plaintiffs obtained a
     default foreclosure judgment by concealing from the court the terms of their contract with
15   defendants; and Hosner v. Skelly (1946) 72 Cal. App. 2d 457 [164 P.2d 573], where plaintiff wife
     obtained default interlocutory and final decrees of divorce by concealing the existence of a property
16   settlement agreement with the defendant.)

17   The complaint in the instant case is devoid of any allegation that appellant was kept in ignorance of
18   the pending divorce action or was prevented from fully participating therein. To the contrary, the
     complaint expressly states that appellant was personally served with process some 14 months prior
19   to entry of the interlocutory decree which he now seeks to set aside. Although the complaint does
     allege that appellant did not learn of the judgment until January 1958, the face of the complaint
20   contains no indication that this was due to any act of concealment on respondent's part.

21   Appellant was advised by the trial court as to the deficiency in his pleading and given time to correct
22   it. He chose not to avail himself of this opportunity.

23   Judgment affirmed.

24   Kaufman, P. J., and Agee, J., concurred.

25   FN 1. Chester v. Chester (1946) 76 Cal. App. 2d 265 [172 P.2d 924], upon which appellant relies,
26   dealt only with the quantum of proof necessary to obtain dismissal of a separate maintenance action
     prior to entry of judgment. The rule there set forth has no bearing whatever on the question of what
27   constitutes extrinsic fraud for the purpose of setting aside a judgment previously rendered.

28

1    12. Under California Code of Civil Procedure-§473 Ms. Daniel's cause of action follows the
2       following :

3       Code of Civil Procedure-§473 (a)(1) The court may, in furtherance of justice, and on any terms
        as may be proper, allow a party to amend any pleading or proceeding by adding or striking out
4       the name of any party, or by correcting a mistake in the name of a party, or a mistake in any
        other respect; and may, upon like terms, enlarge the time for answer or demurrer.  The court
5       may likewise, in its discretion, after notice to the adverse party, allow, upon any terms as may be
        just, an amendment to any pleading or proceeding in other particulars; and may upon like terms
6       allow an answer to be made after the time limited by this code. (2)  When it appears to the
        satisfaction of the court that the amendment renders it necessary, the court may postpone the
7       trial, and may, when the postponement will by the amendment be rendered necessary, require,
        as a condition to the amendment, the payment to the adverse party of any costs as may be just.
8       (b)  The court may, upon any terms as may be just, relieve a party or his or her legal
        representative from a judgment, dismissal, order, or other proceeding taken against him or her
9       through his or her mistake, inadvertence, surprise, or excusable neglect.  Application for this
10      relief shall be accompanied by a copy of the answer or other pleading proposed to be filed
        therein, otherwise the application shall not be granted, and shall be made within a reasonable
11      time, in no case exceeding six months, after the judgment, dismissal, order, or proceeding was
        taken.  However, in the case of a judgment, dismissal, order, or other proceeding determining
12      the ownership or right to possession of real or personal property, without extending the six-
        month period, when a notice in writing is personally served within the State of California both
13      upon the party against whom the judgment, dismissal, order, or other proceeding has been . . .
        taken, and upon his or her attorney of record, if any, notifying that party and his or her attorney of
14      record, if any, that the order, judgment, dismissal, or other proceeding was taken against him or
        her and that any rights the party has to apply for relief under the provisions of Section 473 of the
15      Code of Civil Procedure shall expire 90 days after service of the notice, then the application shall
16      be made within 90 days after service of the notice upon the defaulting party or his or her attorney
        of record, if any, whichever service shall be later.  No affidavit or declaration of merits shall be
17      required of the moving party.  Notwithstanding any other requirements of this section, the court
        shall, whenever an application for relief is made no more than six months after entry of judgment,
18      is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her
        mistake, inadvertence, surprise, or neglect, vacate any (1) resulting default entered by the clerk
19      against his or her client, and which will result in entry of a default judgment, or (2) resulting
20      default judgment or dismissal entered against his or her client, unless the court finds that the
        default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or
21      neglect.  The court shall, whenever relief is granted based on an attorney's affidavit of fault,
        direct the attorney to pay reasonable compensatory legal fees and costs to opposing counsel or
22      parties.  However, this section shall not lengthen the time within which an action shall be
        brought to trial pursuant to Section 583.310. (c)(1)  Whenever the court grants relief from a
23      default, default judgment, or dismissal based on any of the provisions of this section, the court
        may do any of the following: (A) . Impose a penalty of no greater than one thousand dollars
24      ($1,000) upon an offending attorney or party. (B)  Direct that an offending attorney pay an
        amount no greater than one thousand dollars ($1,000) to the State Bar Client Security Fund. (C)
25      Grant other relief as is appropriate. (2)  However, where the court grants relief from a default or
        default judgment pursuant to this section based upon the affidavit of the defaulting party's
26      attorney attesting to the attorney's mistake, inadvertence, surprise, or neglect, the relief shall not
27      be made conditional upon the attorney's payment of compensatory legal fees or costs or
        monetary penalties imposed by the court or upon compliance with other sanctions ordered by the
28      court. (d)  The court may, upon motion of the injured party, or its own motion, correct clerical

1  mistakes in its judgment or orders as entered, so as to conform to the judgment or order
   directed, and may, on motion of either party after notice to the other party, set aside any void
2  judgment or order.

3  13. The highly qualified expert witness, Michael Carrigan has discovered, without refute, and states
4  in his (Exhibit 1) declaration as follows:

5          a)      I was retained by Mark & Bobbie Eddy  to review the chain of title for the
6  Mortgage and Note which is the subject of this foreclosure action. I was asked to render any
7  opinions regarding defects, deficiencies, or possible fraud regarding the chain of title should
8  they exist.

9          b)      The following documents were inspected and / or marked as exhibits:
10  **Exhibit 2** – Mark & Bobbie Eddy Mortgage
    **Exhibit 3** – Mark & Bobbie Eddy Note
11  **Exhibit 4** – June 10, 2012 Assignment to Bank of America, Dec. 29, 2016 Assignment to
12  Federal Home Loan Mortgage Corp.
    **Exhibit 5** –Freddie Mac Series 3450  Investor Capture
13  **Exhibit 6** – Freddie Mac Series 3450   – PC Master Trust Agreement
14  **Deed of Trust:**
15  □ **On April 29, 2008, Debtor Mark & Bobbie Eddy executed a negotiable promissory**
    **note and a security interest in the form of a DEED OF TRUST in the amount of**
16  **$417,000.  This document was filed as document number 2008002045  in the Official**
    **Records of Mono Country.   □ The original lender of the promissory note is**
17  **Countrywide.  □ Mortgage Electronic Registration Systems, Inc. (hereafter "MERS") is**
18  **not named as the payee of the note, but is named as acting solely as a "nominee" for the**
19  **Lender.**
    **Securitization (The Note):**
20  □ **The NOTE was sold, transferred, assigned and securitized into the Freddie Mac**
21  **Multiclass Certificates Series 3450 Trust with a Closing Date of May 30, 2008.**
    **One Notice of Default: □ On Aug. 4, 2009 document number 2009.3892 one Notices of**
22  **Default were recorded in the Official Records, Mono County**
23  **On Nov. 13, 2009 document number 2009.5765, Mono County, a Notice of Trustee Sale**
    **was recorded.**
24  **On Nov. 10, 2010 document number 2010.5432, Mono County, a Rescission of Notice of**
25  **Default was filed.**
26  **On Jan. 10, 2012 document number 2012000132 an Assignment of Deed of Trust was**
    **recorded by Bank of America. The document was signed by Christopher Herrera and**
27  **the notary committed fraud upon the court by attesting to Mr. Herrera as a Vice-**
28  **President of MERS. Mr. Herrera is listed as an employee of Bank of America.**

1    On March 19, 2012 a Notice of Default was recorded in Mono County

2    On June 25, 2012 document number 2012.3332 a Notice of Sale was recorded in Mono
     County.

3    On June 10, 2013 document number 2013.171 a Lis Pendis was recorded in Mono
     County.
4
     On April 14, 2014 document number 2014.1324 a Rescission of Lis Pendis was filed in
5    Mono County.

6    On Jan. 26, 2016 document number 2016.314 a Notice of Default was recorded in Mono
     County.

7    On May 13, 2016 document number 2016.1642 a Notice of Sale was recorded in Mono
     County.
8
     On Dec. 29, 2016 Assignment of Deed of Trust #2 to Federal Home Loan Mortgage
9    Corp. was recorded with Margarita Guardalo as Vice President of Bank of America

10   signing.

     □ Depositor Federal Home Loan Mortgage Corporation is the only rightful party that can
11   place assets into the trust pursuant to investor offering documents as specified above.

12        c)      Within a reasonable degree of investigative certainty, my professional opinion

13   is that a break in the chain of assignments, and Plaintiff's position that it owns the Mark &

14   Bobbie Eddy mortgage, evidence shows the subject Mortgage and Note is owned by Federal

15   Home Loan Mortgage Corporation . The facts surrounding the sale of the subject Mortgage

16   to Federal Home Loan Mortgage Corporation have not been disclosed, and thus a fraud has

17   very likely been perpetrated upon the Court. The concealment of the sale to Federal Home

18   Loan Mortgage Corporation and the "original Note" is not in the possession of the Plaintiff.

19                    **EVIDENCE IN SUPPORT OF OPINION**

20   14. Discovery needs to be conducted to determine if an "original" Mark & Bobbie Eddy Note

21   still exists and who has custody of it. Discovery also needs to be conducted to determine when the

22   endorsement was created and by whom, as well as the facts surrounding the sale of the Mark &

23   Bobbie Eddy Mortgage and Note to Federal Home Loan Mortgage Corporation .

24
     The question becomes why does the Assignee or their agent normally sign an Assignment of Mortgage when it is
25   clear that this is the role of the Assignor? If the Assignor is truly receiving funds for equivalent value of the note
     based on current market conditions, then they should be willing to sign transfers of lien and endorse notes to the
26   new holder in due course. Because this does not happen in this case and most others, almost every Assignment of
     Mortgage is suspect in Examiner's experience. The primary two cases are that the signer signs for a concealment
27   entity or other entity they do not work for without disclosure of true employment; or they sign that they are
     "attorney in fact" for the Assignor. This particular case has the former such example. And mere statements that
28   are unsupported are just that. Statements without evidence that should instead be weighed in the balances to

1    determine the facts.

2  ## FIRST CAUSE OF ACTION:
3  ## REASONABLE RELIANACE : DETRIMENTAL RELIANCE , WILLFUL BLINDNESS,
  ## FRAUD UPON THE COURT

4  Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth
5    herein.

6    14. An actual controversy has arisen and now exists between Plaintiff and Defendants specified
7  hereinabove, regarding their respective rights and duties, in that Plaintiff contends that Defendants, and
8  each of them, do not have an equitable right to foreclose on the Property because Defendants, and each
9  of them, have failed to perfect any security interest in the Real Property collateral, or cannot prove to
10  the court they have a valid interest as a real party in interest to the underlying Deed of Trust. Thus, the
11  purported power of sale, or power to foreclose judicially, by the above specified Defendants, and each
12  of them, no longer applies. Plaintiff are  wrongfully foreclosed in  Mono  County, California..

13    15.  Plaintiff requests that this Court find that the purported power of sale contained in the
14  Deed of Trust is a nullity by operation of law, because Defendants' actions in the processing, handling
15  and attempted foreclosure of this deed involved numerous fraudulent, false, deceptive and leading
16  practices, including, but not limited to, violations of State laws designed to protect borrowers, which
17  have directly caused Plaintiff to be at an equitable disadvantage to Defendants, and each of them.
18  Plaintiff further requests that title to the Real Property remain in Plaintiff's possession during the
19  pendency of this litigation, and deem that any attempted sale of the Real Property is "unlawful and
20  void". Any attempt to transfer the beneficial interest of a trust deed without actual ownership of the
21  underlying Tangible Note  attached  together in  one  with  the  underlying Payment  Intangible
22  Transferable Record, is void under law.   Therefore, Defendant   FEDERAL HOME LOAN
23  MORTGAGE CORPORATION  cannot establish that it is entitled to assert a claim in this case.  For
24  this reason, as well as the other reasons set forth herein below, Federal Home Loan Bank Mortgage
25  Corporation  cannot transfer an interest in Real Property, and cannot recover anything from Plaintiff
26  with unclean hands.

27    16.  Defendants, and each of them, through the actions alleged above, claim the right to
28  illegally commence foreclosure sale of Plaintiff's Real Property under the Mortgage/Deed of Trust on

1   the Real Property via an *in Rem* action supported by false or fraudulent documents. Said unlawful

2   foreclosure action has caused and continues to cause Plaintiff's great and irreparable injury in that Real

3   Property is unique. Plaintiff from the inception of this loan was a victim of predatory lending and the

4   Merrill Lynch loan was a loan in which Plaintiff would never be able to repay. Plaintiff detrimentally

5   relied and had reasonable reliance on the servicer to grant them a modification and made numerous

6   attempts on to be turned down time and time again for unreasonable reasons. Plaintiff sites the

7   following case law :

8       17.    1908.Reasonable Reliance In determining whether Berj Khatchikian]'s reliance on the [misrepresentation/concealment/false promise] was reasonable, the Plaintiff must first prove

9   that the matter was material. A matter is material if a reasonable person would find it important in determining his or her choice of action. If you decide that the matter is material, you must then

10  decide whether it was reasonable for Berj Khatchikian to rely on the

11  misrepresentation/concealment/false promise]. In making this decision, take into consideration [name of plaintiff]'s intelligence, knowledge, education, and experience. However, it is not

12  reasonable for anyone to rely on a [misrepresentation/false promise] that is preposterous. It also is not reasonable for anyone to rely on a

13  misrepresentation/concealment/false promise] if facts that are within [his/her] observation show that it is obviously false. New September 2003; Revised October 2004, December 2013

14       18.    There would appear to be three considerations in determining reasonable reliance.

15       19.    First, the representation or promise must be material, as judged by a reasonable-Person standard. (Charpentier v. Los Angeles Rams (1999) 75 Cal.App.4th 301, 312–313

16  [89 Cal.Rptr.2d 115].) Second, if the matter is material, reasonableness must take into account the plaintiff's own knowledge, education, and experience; the objective reasonable

17  person is irrelevant at this step. Third, some matters are simply too preposterous to be believed by anyone, notwithstanding limited knowledge, education, and experience.

18  (Blankenheim v. E. F. Hutton, Co., Inc. (1990) 217 Cal.App.3d 1463, 1474 [266 Cal.Rptr. 593].) See also CACI No. 1907, Reliance.

19       20.    Sources and Authority • 'After establishing actual reliance, the plaintiff must show

20  that the reliance was reasonable by showing that (1) the matter was material in the sense that a

21       21.    reasonable person would find it important in determining how he or she would act, and (2) it was reasonable for the plaintiff to have relied on the

22  misrepresentation." (Hoffman v. 162 North Wolfe LLC (2014) 228 Cal.App.4th 1178, 1194 [175 Cal.Rptr.3d 820], internal citations omitted.) • "According to the Restatement of Torts,

23  '[r]eliance upon a fraudulent misrepresentation is not justifiable unless the matter misrepresented is material.... The matter is material if... a reasonable [person] would

24  attach importance to its existence or nonexistence in determining his choice of action 1099 0023 in the transaction in question....' But materiality is a jury question, and a 'court may

25  [only] withdraw the case from the jury if the fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been

26  influenced by it.' " (Charpentier, supra, 75 Cal.App.4th at pp. 312–313, internal citations

27  omitted.) • "[T]he issue is whether the person who claims reliance was justified in believing the representation in the light of his own knowledge and experience." (Gray v. Don Miller &

28  Associates, Inc. (1984) 35 Cal.3d 498, 503 [198 Cal.Rptr. 551, 674 P.2d 253], internal

citations omitted.) • "[N]or is a plaintiff held to the standard of precaution or of minimum knowledge of a hypothetical, reasonable man. Exceptionally gullible or ignorant people have been permitted to recover from defendants who took advantage of them in circumstances where persons of normal intelligence would not have been misled. 'No rogue should enjoy his ill-gotten plunder for the simple reason  that his victim is by chance a fool.' " (Blankenheim, supra, 217 Cal.App.3d at p. 1474, internal citations omitted.) • "[G]enerally speaking, ' "[a] plaintiff will be denied recovery only if his  conduct is manifestly unreasonable in the light of his own intelligence or  information. It must appear that he put faith in representations that were  'preposterous' or 'shown by facts within his observation to be so patently and  obviously false that he must have closed his eyes to avoid discovery of the  truth.' [Citation.] Even in case of a mere negligent misrepresentation, a plaintiff  is not barred unless his conduct, in the light of his own information and  intelligence, is preposterous and irrational.... The effectiveness of disclaimers  is assessed in light of these principles. [Citation.]" ' " (Public Employees' Retirement System v. Moody's Investors Service, Inc. (2014) 226 Cal.App.4th  643, 673 [172 Cal.Rptr.3d 238].) • "[I]f the conduct of the plaintiff in the light of his own intelligence and  information was manifestly unreasonable, however, he will be denied a  recovery." (Thrifty Payless, Inc. v. The Americana at Brand, LLC (2013) 218  Cal.App.4th 1230, 1239 [160 Cal.Rptr.3d 718].) • "Except in the rare case where the undisputed facts leave no room for a  reasonable difference of opinion, the question of whether a plaintiff's reliance  is reasonable is a question of fact." (Beckwith v. Dahl (2012) 205 Cal.App.4th  1039, 1067 [141 Cal.Rptr.3d 142].) • " 'What would constitute fraud in a given instance might not be fraudulent  when exercised toward another person. The test of the representation is its  actual effect on the particular mind ....' " (Blankenheim, supra, 217 Cal.App.3d at p. 1475, internal citation omitted.)

RAUD OR DECEIT CACI No. 1908 1101. 0025

22.    The wrongful conduct of the above specified Defendants, and each of them, unless restrained and enjoined by an Order of the Court, will continue to cause great and irreparable harm to Plaintiff. Plaintiff will not have the beneficial use and enjoyment of its Home which is facing foreclosure and is now seeking damages.

23.    Plaintiff has no other plain, speedy or adequate remedy and the injunctive relief prayed for below is necessary and appropriate at this time to prevent irreparable loss to Plaintiff. Plaintiff has suffered and will continue to suffer in the future unless Defendants' wrongful conduct is restrained and enjoined because Real Property is inherently unique and it will be impossible for Plaintiff to determine the precise amount of damage it will suffer.

## SECOND CAUSE OF ACTION
## FRAUD IN THE CONCEALMENT

24.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

25.     Generally, one must prove the following to bring a legally sufficient claim of Fraudulent Concealment.

    a.  Concealed or suppressed a material fact;
    b.  Had knowledge of this material fact;
    c.  That this material fact was not within reasonably diligent attention, observation, and judgment of the Plaintiff;
    d.  That the Defendant suppressed or concealed this fact with the intention that Plaintiff be misled as to the true condition of the property; and
    e.  That Plaintiff was reasonably so misled; and
    f.  That Plaintiff suffered damage as a result.

26.     Defendant Federal Home Loan Mortgage Corporation., successor to the originator, concealed the fact that notary of the assignment the signer never acknowledged to notary that they executed assignment in authorized capacity.  The purported lender claims to have accepted by negotiation the issuer Plaintiff's negotiable instrument as debtor in a deposit account; Defendant Federal Home Loan Mortgage Corporation ., successor to the originator, furthered their deception by purporting to have given consideration for an instrument Defendants' purport to Plaintiff's issued Negotiable Instrument in the form of real money purportedly executing an underlying obligation (indebtedness) between the parties to the purported contract

27.     Plaintiff's reasonable reliance upon the misrepresentations was detrimental. But for failure to disclose the true and material terms of the transaction, Plaintiff could have been alerted to issues of concern. Plaintiff would have known of Defendant's true intentions and profits from the proposed purported loan. Plaintiff would have known that the actions of Defendant Federal Home Loan Mortgage Corp., successor to the originator, would have an adverse effect on the value of Plaintiff's home by clouding the title.

28.     Defendants were aware of the misrepresentations and profited from them.

29.     As a direct and proximate result of the misrepresentations and concealment Plaintiff was damaged in an amount to be proven at trial, including but not lied to costs of Loan, damage to Plaintiff's financial security, emotional distress, and Plaintiff has incurred costs and attorney's fees.

30.      Defendant Federal Home Loan Mortgage Corp., successor to the originator, is guilty of malice, fraud and/or oppression. Defendants' actions were malicious and done willfully in conscious disregard of the rights and safety of Plaintiff in that the actions were calculated to injure Plaintiff. As such, Plaintiff entitled to recover, in addition to actual damages, punitive damages to punish Defendant and to deter them from engaging in future misconduct.

### THIRD CAUSE OF ACTION
### FRAUD IN THE INDUCEMENT

31.      Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

32.      Defendants, successor to the originator, intentionally misrepresented to Plaintiff those Defendants were entitled to exercise the power of sale provision contained in the Mortgage/Deed of Trust. In fact, Defendants were not entitled to do so and have no legal, equitable, or actual beneficial interest whatsoever in the Property.

33.      Defendants misrepresented that they are the "holder and owner" of the Tangible Note and the beneficiary of the Mortgage/Deed of Trust. However, this was not true and was a misrepresentation of material fact. Documents state that the Originator allegedly sold the mortgage loan instrument to FEDERAL HOME LOAN MORTGAGE CORPORATION REMIC TRUST. This type of conduct is outrageous. Defendants are fraudulently foreclosing on the Real Property which they have no monetary or pecuniary interest, and doing so with unclean hands.

34.      Defendants were aware of the misrepresentations and profited from them.

35.      As a direct and proximate result of the misrepresentations and concealment, Plaintiff was damaged in an amount to be proven at trial, including but not lied to costs of Loan, damage to Plaintiff's financial security, emotional distress, and Plaintiff has incurred costs and attorney's fees.

36.      Defendants are guilty of malice, fraud and/or oppression. Defendants' actions were malicious and done willfully in conscious disregard of the rights and safety of Plaintiff in that the actions were calculated to injure Plaintiff. As such Plaintiff is entitled to recover, in addition to actual damages, punitive damages to punish Defendants and to deter them from engaging in future misconduct.

1

## FOURTH CAUSE OF ACTION
## UNCONSIONABLE CONTRACT

2

(Against Defendant . -

3

4      37.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though

5   fully set forth herein.

6      38.    The actions of Defendants as set forth herein, resulted in Plaintiff being forced,

7   tricked, and mislead into parting with their property.

8      39.    Generally, one must prove the following to bring a legally sufficient claim of

9   Unconscionable Contract.
            a.  Undue Influence;

10
            b.  Duress;

11          c.  Unequal Bargaining Power;
            d.  Unfair Surprise; and

12          e.  Lid Warranty

13
       40.    Defendant Federal Home Loan Mortgage Corporation, successor to the originator,

14
   presented in the origination of the purported loan that specific criteria such as FICO score and other

15
   industry standard underwriting requirements must be met in order to qualify for a loan of money for

16
   the subject property from Federal Home Loan Mortgage Corp.

17
       41.    Defendant Federal Home Loan Mortgage Corp., successor to the originator, presented

18
   in the origination of the purported loan that a preliminary signature on the Mortgage loan contract

19
   was required in order to "lock in" an interest rate regarding the terms of the purported loan.

20
       42.    Defendant Federal Home Loan Mortgage Corp., successor to the originator, failed to

21
   clarify in the terms of the Mortgage loan contract that Federal Home Loan Mortgage Corp., successor

22
   to the originator on the contract was in fact acting solely in the capacity as Accommodated Party

23
   account debtor beneficiary for a purported loan of money.  Federal Home Loan Mortgage Corp.,

24
   successor to the originator, concealed they were financially benefitting by bargaining with a third

25
   party to acquire a service release premium via wire funds transfer in order to table fund the purported

26
   loan at the closing using a warehouse line of credit.

27

28

43.    Defendant Federal Home Loan Mortgage Corp., successor to the originator, knew or should have known that through a consciousness of innocence Plaintiff was at a special disadvantage when attempting to grant an alternate means of collection via the Security Instrument real property lien Mortgage to Federal Home Loan Mortgage Corp.

44.    It is clear that Defendant Federal Home Loan Mortgage Corp., successor to the originator, intended to exploit Plaintiff's special disadvantage and deny Plaintiff's superior rights to the subject property.

## FIFTH CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY

45.    Plaintiff re-alleges and incorporate herein by reference all previous paragraphs as though fully set forth herein.

46.    Generally, one must prove the following to bring a legally sufficient claim of Breach of Fiduciary Duty.
     a. Breach of full disclosure;
     b. Breach of good faith and fair dealing;
     c. Use of superior or influential position;
     d. Use of superior knowledge; and
     e. Failure to act in another's best interest

47.    Defendant Federal Home Loan Mortgage Corp., successor to the originator, failed to disclose to Plaintiff that they were not the legitimate creditor .

48.    After April 29, 2008(closing) , and unknown to Plaintiff, Defendant Federal Home Loan Mortgage Corp. (Bank of America, servicer ) obtained the ownership of Mark & Bobbie Eddy's loan through a Private Placement Securitization (See Exhibit A).. Plaintiff asks the court for equitable tolling as this was only discovered recently in the Declaration of Michael Carrigan , expert witness.

49.    Federal Home Loan Mortgage Corp.'s acting not in the best interest of the grantor of the Mortgage/Deed of Trust failed to adhere to their Fiduciary Duties. Defendant Federal Home Loan Mortgage Corp. was to satisfy, release and reconvey the security instrument in order for Plaintiff to

maintain clear and marketable title. As a result of its failure to comply with the Mortgage, Defendants caused a cloud on Plaintiff's superior claim to title. As a result, Plaintiff was harmed.

## SIXTH CAUSE OF ACTION
## QUIET TITLE

50. All Defendants named herein claim an interest and estate in the property adverse to Plaintiff in that defendant asserts he is the owner of the note secured by the Mortgage/Deed of Trust to the property the subject of this suit.

51. All Defendants named herein claims an interest and estate in the Real Property adverse to Plaintiff in that Defendants' asserts to be the owner of Tangible Note secured by the Mortgage/Deed of Trust to the Real Property, the subject of this suit.

52. The claim of all Defendants are without any legal right whatsoever, and Defendants have no estate, title, lien or interest in or to the Real Property, or any part of the Real Property.

53. The claim of all defendants herein named, and each of them, claim some estate, right, title, lien or interest in or to the property adverse to Plaintiff's title, and these claims constitute a cloud on Plaintiff's title to the Real Property.

54. Plaintiff, therefore, alleges, upon information and belief, that none of the parties to the §1031 - Exchange transaction, nor any of the Defendants in this case, hold a perfected and secured claim in the Real Property; and that all Defendants are stopped and precluded from asserting an unsecured claim against Plaintiff's Real Property Estate.

55. Plaintiff requests the decree permanently enjoin defendants, and each of them, and all persons claiming under them, from asserting any adverse claim to Plaintiff's title to the property;

56. Plaintiff request the court award Plaintiff costs of this action, and such other relief as the court may deem proper.

## SEVENTH CAUSE OF ACTION
## SLANDER OF TITLE

57. Plaintiff re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein

58. Generally, one must prove the following to bring a legally sufficient claim of Slander of Title.

a. There was a communication to a third party of;
b. A false statement;
c. Derogatory to another's title;
d. With malice; and
e. Causing special damages

59.    The act of recording the purported April 29, 2008 recording instrument # 2008002045
, Mono Country is a communication to a third party of false statement derogatory to Plaintiff's title
made with malice causing special damages to the Plaintiff's claim of title.

**COUNT V111:**
**CALIFORNIA HOMEOWNERS BILL OF RIGHTS    "CBOR")**

57.    Plaintiff incorporates and realleges all of the allegations set forth in Paragraphs 1
through 56 as if fully set forth herein.

58...    At all times material hereto, Bank of America, N.A. was/is a loan servicer  and the
Property was owner occupied by Plaintiff.

59.    Bank of America, N.A. is a "large servicer" pursuant to CBOR.

60..    Bank of America, N.A. violated  CBOR in the following ways:

a.  Prior to initiating the latest non-judicial foreclosure proceedings, Bank of America, N.A.
failed to contact Plaintiff as required by CBOR, despite Plaintiff's frequent unanswered calls
to the single point of contact.

b.  Bank of America, N.A. . failed to alert Plaintiff that she may request documentation
demonstrating the Trust's authority to foreclose.

c.  Bank of America, N.A. failed to provide post-Notice of Default outreach with regard to the
loan modification process.

d.  Though requested by Plaintiff, Bank of America, N.A. failed to provide a single point of
contact that ever answered the phone as required by CBOR.

e.  Bank of America, N.A.  negligently mishandled the mortgage modification process thus

causing preventing Plaintiff from completing the mortgage modification process before the

foreclosure of Plaintiff's property.

61.. Plaintiff has suffered damages as a result of of Bank of America, N.A.'s violation of CBOR.

## COUNT V1
## VIOLATIONS OF CONSUMER CREDIT PROTECTION ACT (CCPA )

**62. Facts to support CCPA argument:  Plaintiff states in her Affidavit (Exhibit B) the following:**

63. Plaintiff incorporates and realleges all of the allegations set forth in Paragraphs 1 through 1-

62 as if fully set forth herein.

64. Title 15 USC Chapter 41 § 1461(g) states:

> (g) Notice of new creditor
> In addition to other disclosures required by this subchapter, no later than
> 30 days after the date on which a mortgage loan is sold or otherwise
> transferred or assigned to a third party, the creditor that is the new owner
> or assignee of the debt shall notify the borrower in writing of such
> transfer, including -
> (A) the identity, address, telephone number of the new creditor;
> (B) the date of transfer;
> (C) how to reach an agent or party having authority to act on behalf of
> the new creditor;
> (D) the location of the place where transfer of interest in the debt is
> recorded; and
> (E) any other relevant information regarding the new creditor.
> Plaintiffs are entitled to actual and statutory damages as a result of the
> Defendants violation of the Consumer Credit Protection Act.

65.      Defendants violated the CCPA by failing refusing to disclose the purported

assignments/transfer of the Promissory Note and DOT.

## COUNT V1111

## VIOLATION OF FEDERAL REGULATIONS, REGULATION X, 12 C.F.R. § 1024.41

**(b)(2)(i)(A)**

66.     Plaintiff incorporates all of the allegations contained in Paragraphs 1 through 65 herein as if fully set forth herein.

67.     Code of Federal Regulations, Regulation X, 12 C.F.R. § 1024.41 (b)(2)(i)(A) requires that when a bank is made aware of a communication that can reasonably be deemed to be an application for loss mitigation, the servicer must promptly conduct a review to determine whether the communication represents a complete or an incomplete application. Re. X, 12 C.F.R. § expressly notes, "if a servicer receives a loss mitigation application 45 days or more before a foreclosure sale, a servicer shall: (A) Promptly upon receipt of a loss mitigation application, review the loss mitigation application to determine if the loss mitigation application is complete." Reg. X, 12 C.F.R. § 1024.41 (b)(2)(i)(A).

68.     Defendants BANK OF AMERICA, N.A.&  Federal Home Loan Mortgage Corp.  did not conduct a review to determine whether the Plaintiff's submitted loan modification application represented a complete or an incomplete loan modification application.

69.     Reg. X, 12 C.F.R. § 1024.41(b)(1) requires that when a servicer deems the loss mitigation application to be incomplete, the servicer must act affirmatively to complete the application. The servicer must exercise "reasonable diligence" to obtain any documents and information it claims to require to complete the application.

70.     Reg. X, 12 C.F.R. § 1024.41(b)(1) expressly notes, "[A] complete loss mitigation application means an application in connection with which a servicer has received all of the information that the servicer requires from the borrower in evaluation applications for the loss mitigation options available to the borrower. A servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application." Reg. X, 12 C.F.R. §

1   1024.41(b)(1).

2       71.   Defendants Bank of America, N.A. and Federal Home Loan Mortgage Corp. did not

3   act affirmatively to complete the Plaintiff's loan modification application and did not exercise

4   reasonable diligence to obtain any documents/information to complete the application.

5

6       72.   Reg. X, 12 C.F.R. § 1024.41(b)(2)(i)(B) requires (1) of the servicer determine that the

7   application for loss mitigation is complete, it must send the borrower a notice acknowledging that the

8   application is complete within five business days of receipt of the application, and (2) The servicer

9   must provide a written notice to the borrower describing the documents and information needed to

10  complete the application.

11

12      73.   Reg. X, 12 C.F.R. § 1024.41(b)(2)(i)(B) expressly notes:

13          Notify the borrower in writing within 5 days (excluding legal public holidays,
            Saturdays, and Sundays) after receiving the loss mitigation application that the
14          servicer acknowledges receipt of the loss mitigation application and that the
            servicer has determine that the loss mitigation application is either complete or
15          inco0mplete. If a loss mitigation application is incomplete, the notice shall state
            the additional documents and information the borrower must submit to make the
16          loss mitigation application complete and the application date pursuant to
17          paragraph (2)(ii) of this section.

18

19      74.   Defendant Bank of America, N.A. and Federal Home Loan Mortgage Corp.  did not

20  send the Plaintiff a notice acknowledging that his loan modification application was complete within

21  five days of receipt of the application and did not provide a written notice to Plaintiff or Plaintiff's

22  counsel describing the documents and information needed to complete the application.

23

24      75.   Reg. X, 12 C.F.R. § 1024.41(b)(2)(ii) requires the written notice outlined in Reg. X,

25  12 C.F.R. § 1024.41(b)(2)(i)(B) must include a reasonable date from the Bank by which the

26  homeowner should submit the missing documents and information. Reg. X, 12 C.F.R. §

27  1024.41(b)(2)(ii) expressly notes, "[T]he notice required pursuant to paragraph (b)(2)(i)(B) of this

28  section must include a reasonable date by which the borrower submit the documents and information

1    necessary to make the loss mitigation application complete."

2        76.    Defendants BANK OF AMERICA, N.A. did not (1) provide the written notice

3    outlined in Reg. X, 12 C.F.R. § 1024.41(b)(2)(i)(B), and (2) did not provide a reasonable date from

4    the Bank by which the borrower should submit the missing documents and information.
5

6        77.    As a result of the aforementioned conduct, Defendant BANK OF AMERICA, N.A. is

7    in violation of the Code of Federal Regulations , including but not limited to, Reg. X, 12 C.F.R. §

8    1024.41(b)(2)(i)(A); Reg. X, 12 C.F.R. § 1024.41(b)(1); Reg. X, 12 C.F.R. § 1024.41(b)(2)(i)(B);

9    Reg. X, 12 C.F.R. § 1024.41(b)(2)(ii), and is attempting to foreclose on the Plaintiff's property

10   without any legal authority or standing to do so, and in violation of State laws which were
11

12   specifically enacted to protect consumers such as Plaintiff from the type of abusive, deceptive, and

13   unfair conduct in which Defendant engaged. Defendant's unlawful conduct has caused Plaintiff's

14   damages in an amount to be proven at trial. Defendants Wells Fargo Bank as Trustees of their

15   respective securitized trusts are liable for the actions

16   of the servicer because it is within the scope of said agency relationship.
17
                                        **COUNT X**
18

19            **VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT 1692 f (6)**

20   78..Plaintiff incorporates and realleges all of the allegations set forth in Paragraphs 1 through 1- 77

21              as if fully set forth herein.

22   79. 15 U.S.C. § 1692 a (6) Section 1692 f (6) directly regulates the conduct of securitity interest
23
     enforcers. A person enforcing a security interest regulates more than just the collection of a money
24
25   debt. It prohibits: {t}aking or threatening to take any non-judicial action to effect dispossession or

26   disablement of property if (A) there is  no present right to possession of the property claimed as

27

28

1  collateral through an enforceable security intention to take possession of the property; or (C) the

2  property is exempt by law from such dispossession or disablement .

3

4                        **ELEVENTH CAUSE OF ACTION**
5                            **DECLARATORY RELIEF**

6  63. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set

7      forth herein.

8  64. An actual controversy has arisen and now exists between Plaintiff and Defendants specified

9      hereinabove, regarding his respective rights and duties in the subject note(s) and security

10     instrument. Plaintiff requests a judicial determination of the rights, obligations and interest of

11     the parties with regard to the subject property, and such determination is necessary and

12     appropriate at this time under the circumstances so that all parties may ascertain and know

13     their rights, obligations and interests with regard to the subject property.

14  65. Plaintiff should be the equitable owner of the Subject Property.

15  66. Plaintiff seeks to quiet title as of the date of the filing of this Complaint.

16  67. Plaintiff seeks a judicial declaration that the title to the Subject Property is vested in Plaintiff

17     alone and that the Defendants be declared to have no interest estate, right, title or interest in

18     the subject property and that the Defendants, their agents and assigns, be forever enjoined

19     from asserting any estate, right title or interest in the Subject Property subject to Plaintiff's

20     rights.

21                              **PRAYER**

22         WHEREFORE PREMISES  CONSIDERED as Prayer for Relief, and for the

23  foregoing reasons, Plaintiff prays that Defendants be cited to appear and answer herein, and

24  that upon final hearing, Plaintiff be awarded judgment:

25  •      Declaring that Defendants lack any interest in the subject property which would

26  permit them to foreclose, evict, or attempt to foreclose or evict, the trust deed and/or to sell

27  the subject properties;

28

1 • Declaring that the trust deed is not a lien against the subject properties, ordering the

2 immediate release of the trust deed of record, and quieting title to the subject properties in

3 Plaintiff and against Defendants and all claiming by, through or under them;

4 • A refund of any wrongfully or improperly collected fees and payments to Defendants

5 to which it had no right;

6 • Pre- and post-judgment interest at the maximum rate allowed by law;

6 • Attorney's fees;

7 • Monetary relief over $100,000 but not more than $2,000,000,00; and

8 • Such other and further relief at law and/or in equity to which Plaintiff may be justly

9 entitled including but not limited to damages within the jurisdictional limits of this

10 Court, together with pre-judgment and post-judgment interest as are allowed by law.

11 Respectfully submitted, Aug. _16_, 2017 *Feb*

12 Mark & Bobbie Eddy

VERIFICATION

13 I, Mark & Bobbie Eddy, am the Plaintiff in the above-entitled action.

14 I declare under penalty of perjury under the laws of the State of California and of the United
States of America that the foregoing is true and correct.

15 Dated: ~~Aug.~~ *Feb* _16_, 125 Crowley Lake Dr., Mammouth Lake, Ca. 93546

16

17 Mark & Bobbie Eddy

18 **DEMAND FOR JURY TRIAL**

19 Plaintiff hereby requests a jury trial on all issues raised in this complaint.

20 Dated: ~~Aug.~~ *Feb* _16_, 2017

21

22 T

23

24

25

26

27

28